UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| MELINDA MYERS, BARBARA STANERSON, JOHN EIVINS, LIV KELLY-SELLNAU, CHRISTOPHER TAYLOR, and SHUNA TOSA on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> IOWA BOARD OF REGENTS, <br><br> Defendant. | No. 3:19-cv-00081-SMR-SBJ <br><br> CLASS ACTION PETITION |

**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**I.     INTRODUCTION**

Plaintiffs Shuna Tosa and Christopher Taylor have worked for the University of Iowa Hospitals and Clinics ("UIHC") as custodians.[1]  UIHC employs more than a thousand employees many of whom are non-exempt and therefore eligible for overtime pay under state and federal law.  Non-exempt employees at UIHC include "blue collar" workers, clerical workers, certain health care employees, and several types of professional and scientific ("P&S") employees.[2]

---

[1] Defendant Iowa Board of Regents is a state governmental division comprised of a group of nine Iowa citizens appointed by the governor of Iowa and confirmed by the Iowa Senate to govern five public education institutions throughout Iowa, including the University of Iowa and UIHC.

[2] The types and classification of UIHC employees that are classified as non-exempt for the purposes of overtime pay are listed in UIHC's various contracts separate bargaining units including health care professionals, blue collar, and clerical workers.  See Decl. of Nathan Willems at ¶¶ 3-4.  In addition, the types and classifications of UIHC non-exempt employees are listed on UIHC's Human Resources website.  Id. at ¶ 6.  Among the "blue collar" workers are custodians, such as Plaintiffs Tosa and Taylor, cooks, and laundry workers, which are listed in UIHC's contract with the support workers.  See Decl. of Nathan Willems at ¶¶ 3; 6.  Clerical workers include clerks and secretaries.  Id.  Furthermore, health care employees who are classified as non-exempt under the Fair Labor Standards Act include substance abuse counselors and technologists.  Willems Decl. at ¶ 4.  UIHC has specified the P&S job classifications that are non-exempt, including heath records associates, IT support analysts, and supply chain associates.  Willems Decl. at ¶ 5.

1

UIHC pays its non-exempt employees an annual salary in 12 monthly installments paid out on the first of every month. The pay period for these installments is the month immediately preceding the pay date. Pursuant to UIHC's written policy, non-exempt employees earn overtime pay when they work more than 40 hours in a week; however, while their base wages are paid out on the next payday, the payments of overtime wages earned during the same pay period "will always be one month in arrears–for example, adjustments recorded for October will be reflected in the pay you receive during December." Willems Decl. at ¶ 2 (attached as Ex. A). As a result, non-exempt employees, such as Tosa and Taylor, receive their earned overtime pay one or more months after the pay period in which they are earned. See, e.g., Decl. of Shuna Tosa at ¶ 6 (attached as Ex. B); Willems Decl. at ¶ 2.

Plaintiffs claim that, pursuant to UIHC's policy of paying overtime wages for all non-exempt workers "one month in arrears," UIHC violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, by failing to pay overtime wages in a timely manner.[3] See, e.g., Keen v. Mid–Continent Petroleum Corp., 63 F.Supp. 120 (N.D.Iowa 1945), *aff'd,* 157 F.2d 310 (8th Cir.1946) (accrued and earned overtime must be paid on the next regular pay day after the overtime has been earned or as soon as possible thereafter).; Rogers v. City of Troy, N.Y., 148 F.3d 52, 59 (2d Cir. 1998) ("A pay scheme that does not result in the direct evasion of the substantive minimum wage and overtime provisions of the FLSA may nevertheless violate the statute's implicit prompt payment requirement."); Biggs v. Wilson, 1 F.3d 1537 (9th Cir.1993), *cert. denied,* 510 U.S. 1081 (1994) (in case involving the 1990 California budget impasse, the Ninth Circuit held that

---

[3]Plaintiffs have also brought class action claims pursuant to Iowa state Wage Payment and Collection Act, Iowa Code Chapter 91A.3(1), for failure to pay overtime and other earned wages (including additional pay for shift differentials) in a timely manner to both non-exempt workers <u>and</u> overtime exempt workers, such as nurses. While Plaintiffs plan to seek Rule 23 class certification for these claims after some discovery has been completed, these claims are not an issue for purposes of this motion.

the State violated the FLSA by making payments to State highway maintenance workers that were up to 15 days late); 29 C.F.R. § 778.106 ("There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends."). Since UIHC's policy is uniformly applied to all its non-exempt employees, Plaintiff now seeks leave to issue notice pursuant § 216(b) of the FLSA to all individuals who worked for UIHC during the past three years who UIHC classified as "non-exempt."

The standard for obtaining notice under § 216(b) is very lenient. Plaintiffs need only show that the workers they seek to notify were subject to a single decision, policy, or plan that allegedly violated the law. See Frazier v. PJ Iowa, LLC, 337 F.Supp.3d 848, 862–63 (S.D. Iowa 2018) ("[C]onditional certification of a representative class is generally granted.") (internal quotations omitted). Moreover, in a motion for issuance of notice pursuant to § 216(b) of the FLSA, unlike in a motion for class certification under Rule 23, the Plaintiffs do not need to demonstrate that common questions will predominate, that a class action is superior, or that their claims are typical. Id. at 869–70 ("'[C]ourts have repeatedly stated that Section 216(b)'s 'similarly situated' requirement is 'considerably less stringent' than the requirements for class certification under Federal Rule of Civil Procedure 23 ….'") (citing Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 65 (E.D.N.Y. 2016)).

Moreover, whether UIHC's practice actually violates the FLSA is not an issue at this stage. Indeed, "whether at the first or second step in the § 216(b) collective action certification process, plaintiffs need not prove the merits of their claim. That is, plaintiffs do not have to show that the employer actually violated the FLSA." Bouaphakeo v. Tyson Foods, Inc., 564 F. Supp. 2d 870, 893–94 (N.D. Iowa 2008) (quotation marks omitted) (citing Smith v. Heartland

3

Automotive Servs., Inc., 404 F.Supp.2d 1144, 1148 (D.Minn.2005) ("[T]he Court does not consider the merits of Plaintiffs' claims on a decertification motion...."); Vaszlavik v. Storage Tech. Corp., 175 F.R.D. 672, 680 (D.Colo.1997) ( "[W]hether plaintiffs can meet their burden in the liability phase ... is irrelevant to the question of § 216(b) certification.")).[4]

UIHC's non-exempt employees were plainly subject to a single policy or plan given that UIHC's stated policy is to pay non-exempt workers their overtime pay at least "one month in arrears." Moreover, Plaintiffs' time and pay records demonstrate that they were, indeed, paid their overtime late pursuant to UIHC's policy. See Tosa Decl. at ¶¶ 7-12. Thus, notice pursuant to § 216(b) is warranted here.

In addition, notice should issue as soon as possible. Unlike in a class action brought under Rule 23, the statute of limitations in a collective action brought under the FLSA is not tolled with respect to collective action members merely by filing a complaint. See 29 U.S.C. § 256(b). Rather, each collective action member must affirmatively toll the statute of limitations for her claims by "opting into" the lawsuit. See Putman v. Galaxy 1 Mktg., Inc., 276 F.R.D. 264, 275 (S.D. Iowa 2011; 29 U.S.C. § 257. Notice is therefore essential to enabling potential opt-ins to assert their rights under the FLSA and, as the Supreme Court has noted, the issuance of early notice helps the court manage the case, allowing it to "ascertain the contours of the action at the outset." Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 172-73 (1989).

For the reasons set forth below, the Court should conditionally certify, and allow notice to issue to, a collective of all individuals who UIHC classified as non-exempt employees for the

---

[4] See also Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1047 (2016) ("When, as here, 'the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification.'") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 107 (2009)).

purposes of overtime pay during the past three years.[5] Plaintiffs hereby move this Court for an order conditionally certifying and allowing judicial notice of this action to be sent to potential opt-in plaintiffs informing them of their right to opt-in to this case under the Fair Labor Standards Act, 29 U.S.C. § 216(b). Specifically, Plaintiffs seek conditional certification of the following class:

> All individuals who worked for University of Iowa Hospitals and Clinics since August 19, 2016, whom UIHC classified as "non-exempt" for purposes of overtime pay.

## II. UIHC'S POLICY OF PAYING ALL NON- EXEMPT EMPLOYEES OVERTIME "ONE MONTH IN ARREARS."

UIHC employs workers it classifies as non-exempt from the overtime provisions of the Fair Labor Standards Act, such as custodians, clerical workers, health care technicians and others, that are eligible for overtime pay when they work more than 40 hours in a week.[6]  See Am. Class Action Petition at Introduction.  Pursuant to Iowa Code 8A.412, UIHC non-exempt employees are further labeled as "merit" employees who are subject to the Iowa state employee merit system.  Moreover, UIHC labels certain P&S employees, including health records associates and IT support analysts, as non-exempt from overtime pay.  Willems Decl. at ¶ 5.

---

[5] Considering an analogous set of facts, this Court recently granted conditional certification to a group of cable installation technicians who were uniformly classified as independent contractors and alleged violations of the FLSA's overtime provisions. See Oxford v. Broadband Installations of Iowa, LLC, No. 17-cv-178, Dkt. 47, p. 17 (Order granting Motion for Conditional Certification) (S.D. Iowa Dec. 19, 2017).  As demonstrated herein, notice pursuant to the same sets of conditions is warranted in this matter.

[6] The "blue collar" employees, such as custodians, and other non-exempt workers, such as "clerical" workers, are part of a bargaining unit represented by the American Federation of State, County, and Municipal Employees ("AFSCME"), Council 61.  UIHC's health care professionals, including nurses who are classified as exempt from overtime pay and imaging technicians who are classified as non-exempt from overtime pay, are part of a separate bargaining unit represented by the SEIU.  While these unions have negotiated collective bargaining agreements with UIHC, these agreements are limited solely to base wages and do not deal with the payment of overtime.  On February 17, 2017, the State of Iowa enacted amendments to the Public Employee Relations Act ("PERA") that "altered the scope of mandatory collective bargaining" and essentially prohibited unions from negotiating for anything other than "base wages" on behalf of their members.  AFSCME Iowa Council 61 v. State, 928 N.W.2d 21, 28 (Iowa 2019) (citing Iowa Code § 20.9).  As a result, the payment of overtime and other "adjustments" are not covered by the collective bargaining agreements between UIHC and the Plaintiffs' unions.

UIHC's employees, including those who it has classified as non-exempt from overtime pay, are paid their base salary at the end of each month. Willems Decl. at ¶ 2; Tosa Decl. at ¶¶ 6; 8-11. UIHC treats payments for overtime as "adjustments," which also include shift differentials. Pursuant to the University of Iowa Human Resources' policies for both exempt and non-exempt employees:

> Adjustments computed from your monthly time record can include payments for overtime, shift differentials, time without pay, etc. These payments will always be one month in arrears—for example, adjustments recorded for October will be reflected in the pay you receive during December.

See Willems Decl. at ¶ 2.

Thus, when UIHC non-exempt employees work more than 40 hours in a workweek, in addition to their base hourly rate, they earn a one-half overtime premium for each hour over 40. On the following regular payday, however, UIHC only pays the non-exempt workers their base rate for their work during the pay period. The overtime premium, or "adjustment," is not paid until one or two months later. Tosa Decl. at ¶¶ 6-12.

UIHC's policy for paying overtime "one month in arrears" is plainly demonstrated by looking at Tosa's and Taylor's pay records. Plaintiff Tosa's pay statements show that she worked for UIHC as a Custodian I. See Tosa Decl. at ¶¶ 1-2. During the first half of 2018, Tosa was paid an annual base salary of $40,069 in 12 monthly installments of $3,339 paid out on the first of every month.[7] Id. at ¶ 2. During the month of May 2018, UIHC's time records show that she worked 91.30 hours of overtime. See Monthly Time Record Review for May 2018 (attached to Tosa Decl. at ¶¶ 4; 7). Indeed, during the week starting May 7, 2018, Tosa worked 59 hours. Tosa Decl. at ¶ 7. Tosa received her base monthly salary for the work she performed in May

---

[7] Based on a 40-hour workweek over the course of 52 weeks, the annual salary of $40,069 equates to a base rate of $19.26 per hour.

6

2018 on June 1, 2018.[8]  See Paycheck Review at p. 1 (attached to Tosa Decl. at ¶ 8).  Tosa, however, did not receive her overtime pay until July 1, 2018.[9]  See Paycheck Review at p. 2 (attached to Tosa Decl. at ¶ 9).  Thus, while Tosa worked 19 hours of overtime during the week of May 7, 2018, she did not receive the overtime pay she earned that week until July 1, 2018, seven weeks later.  The same pattern emerges when looking at Tosa's other time sheets and paychecks.[10]  The same policy is applied to all of the workers UIHC has classified as non-exempt from the FLSA's overtime pay provisions.

## III.   ARGUMENT

### A.   THE COURT MAY ISSUE NOTICE UPON A MODEST FACTUAL SHOWING THAT SIMILARLY SITUATED CLASS MEMBERS EXIST.

Under the FLSA, a worker may bring an action either on an individual basis or on a collective basis for herself "and other employees similarly situated."  29 U.S.C. § 216(b).  To provide other similarly situated employees with the opportunity to opt in, "the Court has discretion to facilitate the opt-in process and authorize court-supervised notice to potential opt-in plaintiffs."  Frazier, 337 F.Supp.3d at 861 (citing Saleen v. Waste Mgmt., 649 F.Supp.2d 937, 939 (D. Minn. 2009)).  Notice is intended to establish the contours of the action and to further the broad remedial purpose of the FLSA.  See Hoffman-LaRoche, 493 U.S. at 171 (discussing

---

[8] The pay period for the June 1, 2018 paycheck is listed as starting on May 1, 2018, and ending on May 31, 2018.

[9] Tosa's July 1, 2018, paycheck included Tosa's base monthly rate and an additional amount of $2,628.15 for "Time-Overtime Premium."  This roughly equals Tosa's estimated amount of overtime from her May 2018 time sheet.  Since Tosa earned approximately $19.26 per hour, her time-and-a-half overtime rate was approximately $28.80 per overtime hour.  The "overtime premium" Tosa received on July 1, 2018, equates to overtime pay for 91.25 hours.

[10] For example, Tosa's time records for June 2018 shows that she worked 57 hours of overtime.  See Monthly Time Record Review at p. 2 (attached to Tosa Decl. at ¶ 10).  Accordingly, Tosa's paycheck for August 1, 2018, shows the payment of $1,640.79 for "overtime premium," which equals Tosa's overtime pay rate for 57 hours.  Tosa Decl. at ¶ 12.

7

importance of early notice in collective actions in order to "ascertain[] the contours of the action at the outset").

"Courts in this Circuit typically engage in a two-stage analysis when a plaintiff seeks to certify a FLSA collective action pursuant to § 216(b)." Tegtmeier v. PJ Iowa, L.C., 208 F. Supp. 3d 1012, 1018 (S.D. Iowa 2016) (citing Putman, 276 F.R.D. at 269). "In the [conditional certification] stage, also known as the 'notice stage,' the Court considers at an early point in the litigation whether to conditionally certify the opt-in collective action. Tegtmeier, 208 F. Supp. 3d at 1018 (citing Robinson v. Tyson Foods, Inc., 254 F.R.D. 97, 99 (S.D. Iowa 2008)). "If the plaintiffs satisfy this first burden, the court conditionally certifies the class, and potential class members are given notice and the opportunity to opt-in. Littlefield v. Dealer Warranty Servs., LLC, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010) (citing Schleipfer v. Mitek Corp., 2007 WL 2485007, at *3 (E.D. Mo. Aug. 29, 2007)). "[A]t the second step of the process, the defendant may move, and the court may determine, to decertify the class." Perrin v. Papa John's Intern., Inc., 2011 WL 4089251, at *3 (E.D. Mo. Sept 14, 2011) (citing Kautsch v. Premier Communications, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007)). The decertification analysis occurs "after the close of discovery, on a fully developed record that permits the court to make a factual determination as to whether the members of the conditionally certified class are indeed similarly situated." Perrin, 2011 WL 4089251, at *3 (citing Davis v. NovaStar Mortg., Inc., 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005)).

To establish that conditional certification is appropriate, Plaintiffs need only provide "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." Robinson, 254 F.R.D. at 99 (quoting Dietrich v. Liberty Square, L.L.C., 230 F.R.D. 574, 577 (N.D. Iowa 2005)). Plaintiffs can satisfy this requirement "'by making a modest factual

showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Fast v. Applebee's Int'l, Inc., 243 F.R.D. 360, 363 (W.D. Mo. 2007) (quoting Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)); see also Bouaphakeo, 765 F.3d at 796. Plaintiffs' evidentiary burden at this early stage is lenient; as a result, conditional certification is usually granted. Fast, 243 F.R.D. at 362–63.

Importantly, the Court does not evaluate the merits of the case as part of the conditional certification inquiry. See Andersen v. Wells Fargo Fin., Inc., 2012 WL 12871958, at *3 (S.D. Iowa Feb. 6, 2012 (quoting West v. Border Foods, Inc., 2006 WL 1892527, at *3 (D. Minn. June 12, 2006)) ("The Court need not 'make any findings of facts with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations with respect to the evidence presented'"); Pivonka v. Bd. of Cty. Comm'rs of Johnson Cty., Kansas, 2005 WL 1799208, *2 (D. Kan. 2005) (holding that disparate factual and employment settings are reviewed during "second stage" analysis, not during "notice stage"). Merits determinations are reserved for later in litigation; but in the meantime, potential opt-ins should be apprised of their right to join in this action before their claims expire. See Bouapheko v. Tyson Foods, Inc., 564 F.Supp.2d 870, 893 (N.D. Iowa 2008) ("[W]hether at the first step or second step in the § 216(b) collective action certification process, plaintiffs need not prove the merits of their claim.").

### B. THE COURT SHOULD AUTHORIZE NOTICE BECAUSE PLAINTIFFS HAVE MADE A SUFFICIENT SHOWING THAT SIMILARLY SITUATED COLLECTIVE ACTION MEMBERS EXIST.

There can be no doubt here that a group of similarly situated individuals work for UIHC pursuant to a common policy or plan whereby they are paid their overtime wages a month or so after they are earned. UIHC's stated policy is to pay custodians and other non-exempt workers their overtime premiums "one month in arrears." See Willems Decl. at ¶ 2; Tosa Decl. at ¶ 6.

9

Where the Plaintiff has provided "some factual basis from which the court can determine if similarly situated potential plaintiffs exist," the lenient standard for conditional certification is met. Campbell v. Amana Co., L.P., 2001 WL 34152094, at *2 (N.D. Iowa Jan. 4, 2001) (quoting Jackson v. New York Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995)).

The evidence produced by Plaintiffs in support of their motion– including the declaration of Shuna Tosa demonstrating the late payment of her overtime pay, supporting documents, and UIHC's state policy of paying overtime late—are easily sufficient to establish that UIHC uniformly classifies custodians and other workers as "blue collar" workers and pays overtime premiums "one month in arrears." See Willems Decl. at ¶ 2; Tosa Decl. at ¶ 6. "In a typical case, the court decides whether to conditionally certify a class based solely on the plaintiffs' affidavits."[11] Littlefield, 679 F. Supp. 2d at 1017 (citing Huang v. Gateway Hotel Holdings, 248 F.R.D. 225, 227 (E.D. Mo. 2008)). See also Davis v. NovaStar Mortg., Inc., 408 F. Supp. 2d 811, 816 (W.D. Mo. 2005) ("Signed declarations provide appropriate support for [conditional certification] motions"). Plaintiffs have produced much more than that here.

Furthermore, it is proper for the Court to approve notice to non-exempt employees at all of UIHC's locations. UIHC plainly followed a uniform policy of paying overtime premiums "one month in arrears." Thus, notice to all of UIHC's non-exempt workers at all of UIHC's locations is warranted.[12] See, e.g., Oxford v. Broadband Communications of Iowa, No. 4:17-cv-

---

[11] Indeed, courts have even routinely found that plaintiffs had met their burden under § 216(b) where the common policy or practice was not in writing, as is the case here. See, e.g., Robinson, 254 F.R.D. at 102 ("The court finds that the plaintiffs have met their burden, at this stage, of demonstrating a "single decision, policy or plan," in that most production employees are paid on a "gang time" basis, wear some kind of PPE, and use knives in their work."); Fast, 243 F.R.D. at 364 ("Plaintiffs have submitted sufficient evidence to show that Applebees maintains and encourages a practice that results in tipped employees performing non-tip producing tasks for less than minimum wage."); Burch v. Qwest Commc'ns Int'l, Inc., 500 F. Supp. 2d 1181, 1190 (D. Minn. 2007) (conditional certification appropriate where "Plaintiffs have established a colorable basis that they are victims of a single, nationwide policy by Qwest to illegally withhold overtime pay.").

[12] Moreover, courts have routinely granted conditional certification across multiple locations, even where the named plaintiffs worked at only one site. See, e.g., Falcon v. Starbucks Corp., 580 F. Supp. 2d 528, 536 (S.D. Tex. 2008);

10

00178-SMR (S.D. Ia. Dec. 19, 2017) (ECF No. 47 at p. 17) (granting nationwide notice despite plaintiffs' production of declarations from plaintiffs who worked at three of defendants' locations) (attached as Ex. C); Kelly v. Bluegreen Corp., 256 F.R.D. 626, 631 (W.D. Wis. 2009) (granting nationwide conditional certification) ("Where an apparent company-wide policy is behind the alleged FLSA violations, the plaintiff seeking certification for a company-wide class action should not be required to collect specific violations from each location or from each state before seeking authorization to provide notice to employees from all locations.").

## C. EVEN THOUGH QUESTIONS REGARDING THE MERITS ARE IRRELEVANT AT THIS STAGE, PLAINTIFFS HAVE MADE A SUFFICIENT PRELIMINARY SHOWING THAT THEY ARE NOT PAID OVERTIME IN A TIMELY MANNER IN VIOLATION OF THE FLSA.

UIHC may argue that conditional certification should not be granted because its common policy of paying overtime premiums "one month in arrears" does not violate the FLSA. As this Court has repeatedly held, however, such an argument would put the cart before the horse by improperly requiring a ruling on the merits, which are irrelevant at the conditional certification stage. Putman, 276 F.R.D. at 274 (S.D. Iowa 2011) ("Making a determination, at this time, of whether the satellite installation technicians were independent contractors or employees pursuant to the 'economic realities' test, would . . . improperly delve into the merits of Plaintiffs' claim."); Kautsch, 504 F. Supp. 2d at 690 (W.D. Mo. 2007) (citing Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997)) ("at the notice stage, the Court does not reach the merits of Plaintiffs' claims."). Indeed, in recently issuing notice pursuant to § 216(b) of the FLSA, this Court rejected the defendants' arguments that it should first reach the question of whether employees

---

Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D. Md. 2007); Williams v. King Bee Delivery, LLC, 2017 WL 987452 (E.D. Ky. Mar. 14, 2017) (conditionally certifying class of delivery drivers across three states even though plaintiffs worked only in Kentucky); Luiken v. Domino's Pizza, LLC, 2010 WL 2545875, *2-3 (D. Minn. June 21, 2010) (conditionally certifying a nationwide collective action consisting of all Domino's delivery drivers in all but two states).

11

were properly classified as independent contractors, because doing so at the this stage would improperly reach the merits. See Oxford, No. 4:17-cv-00178-SMR (ECF No. 47 at p. 15) ("[t]he weight of authority favors the position that conditional certification may be ordered before the employment relationship should be clarified, particularly in misclassification cases.") (quoting Benion v. Lecom, Inc., 2016 WL 2801562, at *11 (E.D. Mich. May 13, 2016)). What matters for purposes of conditional certification is that all of UIHC's non-exempt workers are paid their overtime premiums "one month in arrears." Whether the practice violates the FLSA will produce a result that is common for all of the similarly situated UIHC workers. Accordingly, questions regarding whether UIHC's payment policy violates the FLSA are not relevant at this stage.

Moreover, the facts here plainly support a claim that UIHC has violated the FLSA by failing to pay overtime in a timely manner. The courts have repeatedly held that "the FLSA requires "'that the employee receive 'prompt payment' of the minimum wage covering all hours worked during the pay period.'" Biggs v. Wilson, 1 F.3d 1537, 1542 (9th Cir. 1993) (quoting Olson v. Superior Pontiac–GMC, Inc., 765 F.2d 1570, 1578 (11th Cir.1985)). Accordingly, the Second Circuit held that "[w]hile the FLSA does not expressly set forth a requirement of prompt payment, such a requirement is clearly established by the authorities." United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 491 (2d Cir.1961). Thus, courts have long held that the FLSA further requires that earned overtime wage be paid on the next regularly scheduled payday. See, e.g., Martin v. United States, 117 Fed. Cl. 611, 621 (2014) (government's payment of employees' overtime pay two weeks later than scheduled paydays "constituted an FLSA violation"); Birbalas v. Cuneo Printing Industries, Inc., 140 F.2d 826, 828 (7th Cir.1944) (past due payment for overtime wages did not foreclose a suit for liquidated damages); Rigopoulos v.

Kervan, 140 F.2d 506, 507 (2d Cir.1943) (overtime compensation "shall be paid in the course of employment and not accumulated beyond regular payday."); Seneca Coal & Coke v. Lofton, 136 F.2d 359, 363 (10th Cir.), cert. denied, 320 U.S. 772 (1943) (FLSA violated if overtime payments not made "when due in the regular course of employment").  Indeed, the FLSA regulations state that the "general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends." 29 C.F.R. § 778.106 (emphasis added).

Here, UIHC's policy requires that non-exempt employees received their overtime "one month in arrears," and not on the next regularly scheduled payday.  Willems Decl. at ¶ 2. Indeed, while Plaintiff Tosa worked 59 hours during the week of May 7, 2018, she did not receive her overtime pay until July 1, 2018, one month after the scheduled payday of June 1, 2018.  Tosa Decl. at ¶¶ 7; 9.  Thus, UIHC's uniform policy for the payment of overtime wages results in a violation of the FLSA for all of the non-exempt employees who work more than 40 hours in a week.

### D. PLAINTIFFS' PROPOSED FORM AND METHODS OF NOTICE ARE PROPER.

Congress' purpose in authorizing § 216(b) collective actions was to avoid multiple lawsuits where numerous employees have been harmed by a common violation of the FLSA. See Hoffman-La Roche, 493 U.S. at 170 (describing benefits of collective action under the analogous Age Discrimination in Employment Act). As the Supreme Court has noted, "[t]hese benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  Id. Court-authorized notice also prevents "misleading communication" to class members about the nature of the pending case. Id. at 172.

In the instant case, Plaintiffs' proposal for court-approved Notice to potential opt-in plaintiffs (Exhibit D) meets the timeliness, accuracy and informational requirements established by the Supreme Court in Hoffman-La Roche. The proposed Notice describes the lawsuit, informs individuals who have worked as consultants for Defendants and were classified as independent contractors of their opportunity to "opt-in," instructs them how to opt-in, and notifies them of the effect of their decision to opt-in.

In addition, notice should be issued to all individuals whom UIHC classified as non-exempt from the overtime pay provisions of the FLSA within the last three years, which is the FLSA statute of limitations for intentional violations.[13]

Plaintiffs, therefore, seek leave to send the Notice and Opt-In Consent Form, attached as Exhibits D and E, respectively, by First Class Mail and e-mail[14] to all individuals who UIHC classified as non-exempt from the FLSA's overtime pay provisions during the past three years. This request is consistent with established practice under the FLSA. See, e.g., Hoffman-

---

[13] See Oxford, No. 4:17-cv-00178 (ECF No. 47 at p. 19) (approving use of three-year statute of limitations for FLSA notice); Littlefield, 679 F. Supp. 2d at 1019 (noting that judicial economy is served by conditionally certifying a larger collective and applying three-year statute of limitations); Burch v. Qwest Commc'ns. Int'l, Inc., 500 F. Supp. 2d 1181, 1191 (D. Minn. 2007) ("Exclusion of potential plaintiffs based on application of the two-year statute of limitations would be premature at this juncture."); see also Benion v. Lecom, Incorporated, 2016 WL 2801562 at *11 (E.D. Mich.) May 13, 2016) (quoting Colley v. Scherzinger Corp., 2016 WL 1388853, *4 (S.D. Ohio Apr. 6, 2016)) ("It is appropriate to allow a three-year look-back period in the notice where '[t]he absence of willful conduct is not established as a matter of law by the pleadings.'").

[14] E-mail is increasingly recognized by courts as an effective method for providing notice. See, e.g., Oxford, No. 4:17-cv-00178-SMR (ECF No. 47 at p. 19) (ordering production of collective action members' email addresses); Syed v. M-I, L.L.C., 2014 WL 6685966, at *8 (E.D. Cal. Nov. 26, 2014) (finding that "email is an increasingly important means of contact" and ordering that notice be sent via hard copy mail and email to all potential opt-ins); Guy v. Casal Inst. of Nevada, LLC, 2014 WL 1899006, at *7 (D. Nev. May 12, 2014), ("email is an efficient, reasonable, and low cost supplemental form of notice"); In re Deloitte & Touche, LLP Overtime Litig., 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (granting request for notice by e-mail) ("communication through email is the norm"); see also Vasto, 2016 WL 2658172 at *16 (granting request for notice by e-mail); Snively v. Peak Pressure Control, LLC, 174 F. Supp. 3d 953, 962 (W.D. Tex. 2016) (same); Butler v. DirectSAT USA, LLC, 876 F. Supp. 2d, 560, 575 (D. Md. 2012) (same); Beasley v. Custom Communications, Inc., 2016 WL 5468255, at *6 (E.D. N.C. Sept. 28, 2016) (granting request for e-mail addresses).

LaRoche, 493 U.S. at 170; see also Chin v. Tile Shop, LLC, 57 F. Supp. 3d 1075, 1095 (D. Minn. 2014).

Additionally, Plaintiffs also request permission to send text message notifications to UIHC's non-exempt workers with a link to a website containing the Notice form. This practice has been approved by a number of courts. See, e.g., Avendano et al. v. Averus, Inc. et al., No. 14-cv-01614,  (D. Colo. Oct. 25, 2016) ("Given the undisputed transient nature of the class and Plaintiff's assertion that text messaging is the most reliable form of communication, the Court finds that notification by text message is likely to be a viable and efficient means of notifying many prospective members of this collective action."); Vasto v. Credico (USA) LLC, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) ("[C]ourts in this District have permitted email and text message distribution where, as here, the nature of the employer's business facilitated a high turnover rate among employees."); Eley v. Stadium Group, LLC, 2015 WL 5611331, *3 (D.D.C. Sept. 22, 2015) (approving distribution of FLSA collective action notices via mail, email and text message, holding that such means of distribution are "in line with what has been approved in other FLSA collective actions.") (citing Bhumithanarn v. 22 Noodle Market Corp., 2015 WL 4240985, *5 (S.D.N.Y. July 13, 2015) (holding that in a case involving a "transient" population, "notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action.")).

To that end, Plaintiffs request that the Court order UIHC to produce the names, last known mailing and e-mail addresses, and telephone numbers for all collective action members. Courts granting conditional certification routinely order the defendant to produce this information to facilitate notice to the class.[15]

---

[15] Oxford, supra; Harris v. Chipotle Mexican Grill, Inc., 49 F. Supp. 3d 564, 582 (D. Minn. 2014) (ordering defendant to provide name, last known home or residence address, and personal email address for each potential opt-

15

Once UIHC has produced collective action members' names and contact information, and notices have been mailed, collective action members should have a 90-day window to return a signed consent form. "Notice periods may vary, but numerous courts around the country have authorized ninety-day opt-in periods for collective actions." Butler, 876 F. Supp. 2d at 575; Murray, 2017 WL 514323, at *6 ("The Court finds that a 90-day opt-in period is sufficient and will better serve the interests of efficiently facilitating notice without further delaying this litigation because of the transient nature of [the collective action members]."). [16] Indeed, this Court recently agreed in approving a 90-day opt-in period in another collective action seeking overtime pay. Oxford, supra ("the Court finds that allowing a ninety-day window for potential class members to opt in is appropriate in this case.");

The Court should also authorize Plaintiffs to mail, e-mail, or text a reminder to all collective action members who received the notice but have not yet responded to opt in to this matter within forty-five (45) days of the first issuance of the notice. Courts regularly authorize

---

in plaintiff); Custom Commc'ns, Inc, 2016 WL 5468255, at *6 (ordering production of names, dates of employment, e-mail addresses, telephone numbers, and last-known addresses); Curtis v. Scholarship Storage Inc., 2015 WL 1241365, at *5 (D. Me. Mar. 18, 2015) (granting "Plaintiffs' request for the names, addresses, telephone numbers, and email addresses of all potential collective action members."); Poreda v. Boise Cascade, L.L.C., 532 F. Supp. 2d 232, 242 (D. Mass. 2008) ("Defendant shall provide Plaintiff with the names, addresses, email addresses and telephone numbers of all employees who potentially could be members of the FLSA Class electronically within twenty days of this order."); Vaughn v. Rescue Rangers, LLC, 3:15-cv-0056-JAG, Dkt. 30 (Order), p. 1 (E.D. Va. Jan. 13, 2016) (ordering Defendants to produce contact information, including e-mail addresses, for potential plaintiffs); Gerges v. Enter. Sys. Software, LLC, No. 3:15-cv-01816-JZ, Dkt, 19, p. 2 (Order approving Stipulation for Conditional Certification) (N.D. Ohio Oct. 27, 2015) (Defendants are to provide spreadsheet with contact information, including e-mails, for potential plaintiffs).

[16] See also Benion, 2016 WL 2801562 at *11 (citing Hoffmann-La Roche, 493 U.S. at 170) ("One of the purposes of judicially supervised notice is to protect the claims of potential plaintiffs for unpaid overtime compensation . . . That interest, of course, must be balanced with expeditious and prudent case management. The 90-day notice period proposed by the plaintiffs properly strikes that balance."); Club Cabaret, Inc., 2015 WL 6444793 at *6 ("Courts routinely approve a 90–day opt-in period, and the Defendant provides no good reasons not to do so here."); Harris v. Performance Transp., LLC, 2015 WL 1257404, at *6 (M.D. Fla. Mar. 18, 2015) ("courts routinely grant ninety-day opt-in periods."); Wlotkowski v. Michigan Bell Tel. Co., 267 F.R.D. 213, 220 (E.D. Mich. 2010) (approving a 90-day notice period); Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 68–69 (E.D. Pa. 2009) (same); Lima v. Int'l Catastrophe Sols., Inc., 493 F. Supp. 2d 793, 804 (E.D. La. 2007) ("The Court believes that an opt-in period of ninety days is adequate.").

reminder notices to increase the chance that workers will be informed of their rights. See Morris v. Lettire Const., Corp., 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate."); Sanchez v. Sephora USA, Inc., 2012 WL 2945753, *6 (N.D. Cal. July 18, 2012) ("[C]ourts have recognized that a second notice or reminder is appropriate in an FLSA action since the individual is not part of the class unless he or she opts-in.") (internal citations omitted). This is particularly appropriate "in an FLSA action since the individual is not part of the class unless he or she opts-in." Sephora, 2012 WL 2945753, at *6 (citation omitted). Plaintiffs will bear the cost of notice, as well as the reminder mailing, and it will not change the end of the notice period.

**IV.     CONCLUSION**

Plaintiffs have amply shown that notice is appropriate at this stage of the case. Accordingly, Plaintiffs respectfully request that the Court:

(1)     Grant the Motion and enter the proposed order (attached as Ex. F).

(2)     Conditionally certify this action as a collective action under 29 U.S.C. § 216(b);

(3)     Order that Notice be issued to all individuals who worked for UIHC as non-exempt employees during the past three years by first class mail, e-mail, and text message; and

(4)     Order that Defendant produce a list of the names, last-known mailing and e-mail addresses, and telephone numbers for all individuals who worked for Defendant during the past three years as a non-exempt employee.

                                          Respectfully submitted,

                                          PLAINTIFFS MELINDA MYERS, BARBARA STANERSON, JOHN EIVINS, LIV KELLY-SELLNAU, CHRISTOPHER TAYLOR, and SHUNA TOSA on Behalf of Themselves and Others Similarly Situated

By their attorneys,

/s/ Nathan Willems
NATHAN WILLEMS, AT0009260
RUSH & NICHOLSON, P.L.C.
115 First Avenue SE, Suite 201
P. O. Box 637
Cedar Rapids, IA  52406-0637
Telephone (319) 363-5209
Facsimile (319) 363-6664
nate@rushnicholson.com

Harold Lichten (*pro hac vice* admission anticipated)
Benjamin J. Weber (*pro hac vice* admission anticipated)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
bjweber@llrlaw.com