## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| MELINDA MYERS, BARBARA STANERSON, JOHN EIVINS, LIV KELLY-SELLNAU, CHRISTOPHER TAYLOR, and SHUNA TOSA on behalf of themselves and others similarly situated, | ) ) ) ) ) | No.  3:19-cv-00081-SMR-SBJ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CLASS ACTION PETITION |
| vs. | ) | |
| | ) | |
| IOWA BOARD OF REGENTS, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT IOWA BOARD OF REGENTS' MOTION TO DISMISS PLAINTIFFS' FLSA CLAIM

The Iowa Board of Regents pays its non-exempt workers, such as Plaintiffs Shuna Tosa and Christopher Taylor who worked for the University of Iowa Hospitals and Clinics as custodians, overtime pursuant to the federal Fair Labor Standards Act when they work more than 40 hours in a week (albeit late).  These overtime payments are made pursuant to Board's collective bargaining agreements,  its Operations Manual, and its Employee Handbook.  See, e.g., University of Iowa Operations Manual at Section 17.2 (referring to policies that "apply to staff members who are eligible for overtime under the Fair Labor Standards Act (FLSA).") (attached as to Decl. of Benjamin J. Weber ("Weber Decl.") as Ex. 1); SEIU CBA (denoting classes of workers who are "non-exempt under the Fair Labor Standards Act") (attached to Weber Decl. as Ex. 2); Employee Manual for Staff Nurses and Allied Health Professionals (attached to Weber Decl. as Ex. 5) ("Bargaining unit classifications are designated by the Employer as exempt or non-exempt in accord with the Fair Labor Standards Act (FLSA).  Those designated as non-exempt are eligible for overtime consistent with the Act.").

The Iowa Supreme Court, meanwhile, has repeatedly held that, pursuant to Iowa Code Chapter 91A and Chapter 8A (or its predecessor Chapter 19A), the State of Iowa has "waived sovereign immunity by expressly consenting to be sued in state court for FLSA overtime remuneration." Raper v. State, 688 N.W.2d 29, 54 (Iowa 2004); Anthony v. State, 632 N.W.2d 897, 902 (Iowa 2001) ("We are convinced that the statutory scheme for deriving pay plans has been implemented in a manner that includes FLSA overtime remuneration as compensation owed by an employer."); Kennedy v. State, 688 N.W.2d 473, 481 (Iowa 2004) (allowing police officers to proceed with FLSA claims against the state of Iowa).

Plaintiffs filed their complaint in Iowa state court alleging solely claims under the Iowa Wage Payment and Collection Law ("IWPCL"). The Board did not oppose Plaintiffs' motion to amend the complaint to add a claim under the FLSA. The Board then removed this case from state court and agreed to a schedule whereby Plaintiffs were required to file a motion for conditional certification of their FLSA claim on an expedited basis (ECF No. 11), which Plaintiffs did indeed file (ECF No. 14). By removing this case, the Board waived any immunity under the Eleventh Amendment to being sued in federal court. Church v. Missouri, 913 F.3d 736, 742 (8th Cir. 2019) (citing Lapides v. Board of Regents of Univ. Sys. of Ga., 535 U.S. 613, 624 (2002) ("We conclude that the State's action joining the removing of this case to federal court waived its Eleventh Amendment immunity")).

Uncomfortable with the bed it has made for itself, the Board now argues that it still retains sovereign immunity for claims under the FLSA. In support, the Board points out that Chapter 8A requires the director of the Iowa Department of Administrative Services to develop pay plans for all state employees, except those who work for the Board. See, e.g., Chapter 8A.413(3); Iowa Admin. Code 11-51.1. While that is true, the Iowa Code does not permit the

Board to proceed in a vacuum.  Rather, the Iowa Code requires that the "[t]he state board of regents shall adopt rules <u>not inconsistent with the objectives of this subchapter</u> for all of its employees not cited specifically in this subsection. The rules are subject to approval by the director."  Iowa Code § 8A.412(5) (emphasis added); Iowa Admin. Code § 681-3.37 ("board of regents will adopt a pay plan for all the classes established in the classification plan.").  Thus, to the extent that the Board has established rules for overtime pay that conflict with the rules developed by the Department of Administrative Services, which the Board has not, they would be invalid.  Rather, as demonstrated below, the Iowa Supreme Court's holdings in <u>Anthony</u>, <u>Raper</u>, and <u>Kennedy</u>, should similarly apply to the Board, which as demonstrated below, operated under rules and policies that required the payment of overtime pursuant to the FLSA.

The Board's argument further ignores the express language in the IWPCL which includes in its definition of "wages" "any payments to the employee . . . which are due an employee under an agreement with the employer or the policy of the employer"  Iowa Code § 91A.2(7). Accordingly, Chapter 8A requires that "Rulemaking shall be carried out with due regard to the terms of collective bargaining agreements. A rule shall not supersede a provision of a collective bargaining agreement negotiated under chapter 20."  Iowa Code Ann. § 8A.413.  For many years, the Board has entered into contracts that require the payment of overtime pursuant to the FLSA.  <u>See</u>, <u>e.g.</u>, 2017 SEIU CBA (attached to Weber Decl. at Ex. 3) ("Bargaining unit classifications are designated by the Employer as exempt or non-exempt in accord with the Fair Labor Standards Act (FLSA).  Those designated as non-exempt are eligible for overtime consistent with the Act.").  Thus, pursuant to the IWPCL, the Board has agreed to pay wages pursuant to the FLSA and, as a result, has waived sovereign immunity.

Moreover, the Board ignores the Iowa Supreme Court's holding that the State may constructively waive sovereign immunity for claims under federal law through its contracts or through its other conduct.  Lee v. State, Polk Cty. Clerk of Court, 815 N.W.2d 731, 741 (Iowa 2012).  Prior to that ruling, the Supreme Court held in Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 682 (1999) that federal courts cannot acknowledge constructive waiver when evaluating whether a state entity may be sued in federal court pursuant to the Eleventh Amendment.  The Board has waived any such argument under Lapides by removing this case to federal.  Furthermore, the Iowa Supreme Court has a long history of holding that the State of Iowa may constructively waive its sovereign immunity pursuant to the Tenth Amendment to liability under federal law.  Lee, 815 N.W.2d at 741 (Iowa 2012) ("The same public policy grounds that supported the adoption of the doctrine at that time exist today, and our constructive-waiver doctrine similarly remains viable today despite the federal approach to limit waiver of sovereign immunity to express waiver.") (citing Kersten Co. v. Dep't of Soc. Servs., 207 N.W.2d 117, 119 (Iowa 1973); State v. Dvorak, 261 N.W.2d 486, 489 (Iowa 1978)).  As discussed below, the Board indeed waived its sovereign immunity by developing contracts and policies that required it to pay non-exempt employees overtime pursuant to the FLSA.

For these reasons and those stated below, the Court should deny the Board's motion to dismiss.

## ARGUMENT

### A.  The State and the Board Have Expressly Waived Sovereign Immunity to Claims Pursuant to the FLSA.

In Anthony, the Iowa Supreme Court held that a combination of the Iowa Wage Payment Collection Law ("IWPCL") and the applicable administrative regulations constituted a waiver by

the State of Iowa of sovereign immunity to suit under the FLSA.  Anthony v. State, 632 N.W.2d 897, 900 (Iowa 2001).  In doing so, the court looked at the IWPCL's definition of "employer" at § 91A.2(4) which includes entities identified as persons under Iowa Code Chapter 4.  Chapter 4 defines a "person" as an "individual, corporation, limited liability company, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, or any other legal entity."  Iowa Code § 4.1(20).  The court concluded that the "State and its agencies are thus classified as employers subject to the Iowa Wage Payment Collection Law."  Anthony, 632 N.W.2d at 901.  This applies to the Board.

Next, the Anthony court looked at the IWPCL's definition of "wages" which includes "any compensation owed by an employer."  Iowa Code § 91A.2(7).  Additionally, the statute includes as "wages" "any payments to the employee . . . which are due an employee under an agreement with the employer or under a policy of the employer."  Id. (emphasis added).

The court the turned to Iowa Code § 19A.9(2), which required the Director of the Department of Personnel to develop pay plans for all state employees, excluding employees of the state board of regents.  The pay plan developed by the Director was codified in the State's regulations and defined "overtime" as "hours that exceed 40 in a workweek" and "overtime covered . . . employee" as "employee . . . eligible for premium overtime compensation in accordance with the federal Fair Labor Standards Act."[1]  Iowa Admin. Code § 581-1.1.  The

---

[1]    The Department of Personnel Services was renamed as the Department Administrative Services, which is regulated at Chapter 8A.  Both Chapter 8A and its accompanying regulations at Iowa Admin. Code § 11-51.1 contain the same express waiver that the regulations held prior to 2003.  See Iowa Admin Code § 53.11(2) ("*Eligible job classes.* An employee in a job class designated as overtime eligible shall be paid at a premium rate (one and one-half hours) in accordance with the federal Fair Labor Standards Act."); § 53.11(3) ("*Exempt job classes.* An employee in an overtime exempt job class shall not be paid for hours worked or in pay status over 40 hours in a workweek."

court held that "[a]lthough the impetus for state wage policy involving FLSA overtime pay is the mandate of the federal legislation, the State has acceded to that mandate in a manner that establishes the resulting overtime remuneration as compensation owed by an employer." Anthony, 632 N.W.2d at 901.

The Board argues that holding in Anthony cannot be applied here because the pay plan developed by the Director, which is now mandated in Chapter 8A, for State employees, excludes the Board from the Director's rule-making authority. No court, however, has found that the Board alone is exempt from the State's waiver of sovereign immunity. Moreover, the Board's argument ignores the express language of the IWPCL. The IWPCL includes in its definition of "wages" "any payments to the employee . . . which are due an employee under an agreement with the employer or the policy of the employer" Iowa Code § 91A.2(7) (emphasis added). Similarly, Chapter 8A requires that "Rulemaking shall be carried out with due regard to the terms of collective bargaining agreements. A rule shall not supersede a provision of a collective bargaining agreement negotiated under chapter 20." Iowa Code Ann. § 8A.413. Thus, the statute expressly incorporates, not just the formal pay plan developed by the Board, but the contracts and policies of the Board.[2]

The Board's motion completely ignores its contracts and policies, which uniformly state that non-exempt workers earn overtime pursuant to the FLSA. For example, the Board's current CBA with the SEIU includes a table that "denotes non-exempt [employee classes] under [the] Fair Labor Standards Act." See Weber Decl. at Ex. 2. The prior CBA in effect from 2015 to

---

[2]  Indeed, as explained above, the Board is still required to develop its own pay plan that must be consistent with the policies of the Department of Administrative Services and is made subject to the Director's approval. See Iowa Code § 8A.412(5) (emphasis added); Iowa Admin. Code § 681-3.37.

2017 went further, stating: "Bargaining unit classifications are designated by the Employer as exempt or non-exempt in accord with the Fair Labor Standards Act (FLSA). Those designated as non-exempt are eligible for overtime consistent with the Act." <u>See</u> 2017 SEIU CBA (attached to Weber Decl. at Ex. 3).

In addition, the Board's policies are expressly stated in its Operations Manual and Employee Handbook.[3]  The Operations Manual currently has a section regarding overtime that states: "The following policies apply to staff members who are eligible for overtime under the Fair Labor Standards Act (FLSA). This includes all merit staff, as well as non-exempt professional and scientific staff."[4]  <u>See</u> Weber Decl. at Ex. 1. Thus, the agreements and policies of the Board plainly require the payment of overtime pursuant to the FLSA.[5]

Furthermore, as with the Department of Administrative Services' rules applicable to other state employees, the Board's own rules support a finding of express waiver. The Board is statutorily required to govern the UIHC. Iowa Code § 262.7(7). Moreover, the Board is required to employ professors, instructors, officers, and employees <u>and fix their compensation</u>. <u>Id.</u> § 262.9(2) (emphasis added). In doing so, the "board of regents will adopt a pay plan for all the

---

[3]     The Operations Manual "contains policies and procedures governing the internal operations of the University." See https://opsmanual.uiowa.edu/protocol-approval-university-policies-university-iowa-operations-manual.

[4]     Moreover, the University of Iowa website's Human Resources section, which includes a section on FLSA, states that "Employees working in excess of 40 hours per week are required to be paid overtime premium pay, unless they qualify for exemption from the FLSA requirement." Weber Decl. at Ex. 6 (https://hr.uiowa.edu/pay/compensation-and-classification/fair-labor-standards-act-regulations).

[5]     Indeed, the University of Iowa Human Resources website states: "Iowa's law covering collective bargaining for public employees change in February 2017. Under the new law, unions negotiate wages for the employee groups they represent, other <u>topics previously addressed during contract negotiations are covered by Regent and university policies</u>." <u>See</u> Weber Decl. at Ex. 7.

classes established in the classification plan."  Iowa Admin. Code § 681-3.37.  Moreover, the

Board is obligated under Chapter 8A to develop rules that are "not inconsistent" with the

remainder of the Chapter.  Iowa Code § 8A.412(5).  See also Iowa Admin. Code § 681-3.37(8A)

(Board must develop pay plan).

The Board's pay plans are included on the University of Iowa Human Resources'

website, which contains a section on Pay and Compensation and Classification, which states:

"Employees working in excess of 40 hours per week are required to be paid overtime premium

pay, unless they qualify for exemption from the FLSA requirement."  Weber Decl. at Ex. 6

(https://hr.uiowa.edu/pay/compensation-and-classification/fair-labor-standards-act-regulations).

Moreover, the University's Operations Manual and Employee Handbook contain identical

statements regarding the payment of overtime pursuant to the FLSA.  Thus, the Board has

expressly waived sovereign immunity regarding the claims under the FLSA.

> **B.     In the Alternative, the Court Should Find that the Board Has Constructively Waived Its Sovereign Immunity.**

Even if this Court does not find that there has been an express waiver of sovereign

immunity, it may still hold that the Board has constructively waived sovereign immunity.  In

1973, the Iowa Supreme Court held that sovereign immunity may be impliedly waived by the

state in certain cases.  Kersten Co. v. Dep't of Soc. Servs., 207 N.W.2d 117, 119 (Iowa 1973).

The court recognized that immunity in Iowa state courts was "judicially created," and as a result,

the rule could be "judicially renounce[d]."  Id. at 118.  The court "subsequently affirmed the

principle that 'consent to suit or waiver of sovereign immunity need not always be restricted to

legislative enactment.'"  Lee, 815 N.W.2d at 737–38 (quoting State v. Dvorak, 261 N.W.2d 486,

489 (Iowa 1978)).  Accordingly, immunity could be waived where "the State had voluntarily

created legal relationships with private citizens that subjected it to liability."  Id. (citing Dvorak,

8

261 N.W.2d at 489 (concluding, since the State voluntarily became a landowner, it must accept the obligations of any other landowner); Kersten, 207 N.W.2d at 120 ("[T]he State, by entering into a contract, agrees to be answerable for its breach and waives its immunity from suit to that extent.").

Later, the Supreme Court rejected the principle of constructive waiver of sovereign immunity in federal courts as unconstitutional. Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 682 (1999). The Iowa Supreme Court, however, held that Coll Sav. Bank did not preclude Iowa state courts from finding constructive waiver of sovereign immunity to the filing of federal law claims against the State of Iowa in Iowa state courts. Lee v. State, Polk Cty. Clerk of Court, 815 N.W.2d 731, 741 (Iowa 2012). The court held:

> We reject the argument by the State that we no longer recognize constructive waiver of immunity. We adopted the doctrine of constructive waiver in Kersten based on the public policy that it would be abhorrent to permit the State to enter into contracts with no corresponding obligation to perform its promises under the contract. The same public policy grounds that supported the adoption of the doctrine at that time exist today, and our constructive-waiver doctrine similarly remains viable today despite the federal approach to limit waiver of sovereign immunity to express waiver.

Lee, 815 N.W.2d at 741. Thus, "the State may constructively waive its immunity by entering into a contract." Id. at 742 (citing Kersten, 207 N.W.2d at 120) (emphasis added). In addition, the Iowa Supreme Court held that "we have not confined the constructive waiver of immunity doctrine to contracts entered into by the State, but have applied it in other circumstances where the State voluntarily assumes legal consequences." Lee, 815 N.W.2d at 742 (citing Dvorak, 261 N.W.2d at 489) (emphasis added). "Thus, in addition to conduct by the State in entering into a contract, other conduct of the State can give rise to constructive waiver of immunity." Id. (emphasis added).

When evaluating a motion to dismiss under Rule 12(b)(6), where there is a question regarding the formation of a contract, courts may examine the contract documents and public records in deciding a motion to dismiss.  <u>Stahl v. United States Dep't of Agric.</u>, 327 F.3d 697, 700 (8th Cir.2003); <u>Levy v. Ohl</u>, 477 F.3d 988, 991 (8th Cir.2007).  Further, "[t]o survive a motion to dismiss a breach of contract claim, a plaintiff need not prove each of the elements of the claim, nor must a plaintiff provide evidence supporting the claim."  <u>In re RFC</u>, 2015 WL 3915749, at *2 (D. Minn. June 25, 2015).  Thus, to the extent that this Court holds that the Board may waive sovereign immunity through its contracts, it should deny the Board's motion to dismiss or, at a minimum, grant leave for Plaintiffs to amend their complaint to allege facts showing how a contract to pay overtime under the FLSA was established here.

Regardless, the overwhelming evidence shows that Board entered into contracts that required the payment of overtime pursuant to the FLSA.[6]  The current version of the contract between the Board and the SEIU "denotes" classes of workers who are "non-exempt under the Fair Labor Standards Act."  <u>See</u> Weber Decl. at Ex. 2.  Just a few years earlier, prior versions of the Board's CBAs contained a section on "Overtime" which stated "Bargaining unit classifications are designated by the Employer as exempt or non-exempt in accord with the Fair Labor Standards Act (FLSA).  Those designated as non-exempt are eligible for overtime consistent with the Act."  <u>See</u> 2017 SEIU CBA (attached to Weber Decl. at Ex. 3).  A prior versions of the AFSCME CBA, meanwhile, stated that "overtime" included "time that an

---

[6]     The Court should note that the only reason that current CBAs do not contain more references to the FLSA and overtime is that in 2017, Iowa stripped state employee unions of their right to bargain for anything above their base pay.  Iowa Code § 20.9.  The statute still allows the Board to negotiate over "other matters mutually agreed upon."  <u>Id</u>.  Prior to 2017, the CBAs entered into by the Board contained more extensive references to the Board's obligations under the FLSA to pay overtime.  <u>See</u> Weber Decl. at Exs. 3-4.

employee works in excess of forty (40) hours per work period" and that "overtime shall be compensated at a premium rate of time and one-half the employee's base hourly pay or actual overtime hours worked." See 2009 AFSCME CBA at p. 44, 46 (attached to Weber Decl. at Ex. 4).

The Board further entered into contracts with its employees to pay overtime through its Operations Manual and Employee Handbook. As the Iowa Supreme Court held, "if a state employee handbook creates a contract, the State constructively waives its immunity from suit over that contract."[7] Lee, 815 N.W.2d at 742 ("Employee handbooks can create contracts between employers and employees.") (citing Anderson v. Douglas & Lomason Co., 540 N.W.2d 277, 283 (Iowa 1995). The University Operations Manual plainly states that the Board will pay non-exempt workers "overtime under the Fair Labor Standards Act (FLSA)."[8] Op. Manual at

---

[7]     "An employee handbook creates a contract when three elements are present: (1) the handbook is sufficiently definite in its terms to create an offer; (2) the handbook is communicated to and accepted by the employee so as to constitute acceptance; and (3) the employee provides consideration." Anderson v. Douglas & Lomason Co., 540 N.W.2d 277, 283 (Iowa 1995) (emphasis in original). However, "it unnecessary that the particular employee seeking to enforce a promise made in an employee manual have knowledge of the promise." Id. at 285 (this "produces 'the salutary result that all employees, those who read the handbook and those who did not, are treated alike.'") (quoting E. Allan Farnsworth, Developments in Contract Law During the 1980's: The Top Ten, 41 Case W.Res.L.Rev. 203, 209 (1990)).

[8]     The University Employee Handbook's Introduction states: "While the Operations Manual is the primary document containing the governing policies and procedures for all staff as well as faculty, in cases of unionized staff, a negotiated contract through their respective unions (i.e. AFSCME and SEIU) takes precedence for some policies. Information about both AFSCME and SEIU contracts can be found in the labor/union relations section." The Employee Handbook further explains: "A brief description of some of the policies and procedures that govern the workings of the university follow. More specific information on these policies and procedures can be found in the University Operations Manual, the state Merit rules, and the various collective bargaining agreements. In the event that a discrepancy exists, the Operations Manual is the official source for all approved policies and procedures except where a collective bargaining agreement speaks specifically to an issue for unionized employees." https://hr.uiowa.edu/administrative-services/policies/staff-handbook//university-policies-and-procedures.

Section 17.2.  In addition, the employee handbook contains an entire section on the FLSA regulations and several statements promising non-exempt workers overtime under the FLSA. See, e.g., Weber Decl. at Ex. 5 ("Employees working in excess of 40 hours per week are required to be paid overtime premium pay, unless they qualify for exemption from the FLSA requirement.").

The Board, meanwhile, attempts to turn the Iowa Supreme Court's holding in Lee on its head by arguing that "where there is express statutory waiver, Iowa courts will 'strictly follow the statutory guidelines waiving the State's immunity.'"  Def.'s Mot. to Dismiss at p. 4 (quoting Lee, 815 N.W.2d 740).  The Iowa Supreme Court, however, did not limit waiver to where it is express.  Instead, the court held that "our belief that the State is answerable for the legal relationships it voluntarily creates."  Lee, 815 N.W.2d at 740 (citing Swanger v. State, 445 N.W.2d 344, 349 (Iowa 1989) (recognizing Kersten and Dvorak were premised on the State voluntarily undertaking legal relationships)).  The Board was obligated to pay wages as required by its agreements and polices under the IWPCL and executed agreements and policies requiring it to pay overtime pursuant to the FLSA.  Thus, Lee strongly supports a finding here that the Board waived sovereign immunity to claims under federal law.

As stated above, the Iowa Supreme Court has expressly held that the State has waived sovereign immunity for claims pursuant to the FLSA.  Raper, 688 N.W.2d at 54 ("we have already determined the State waived its sovereign immunity by expressly consenting to be sued in state court for FLSA overtime remuneration.").  Plaintiffs are not aware of any court endorsing the Board's piecemeal approach to sovereign immunity.  Without question, states may choose to waive some types of legal claims, but refrain from waiving others.  Logically, however, the Boards' rights to sovereign immunity can only flow from the State of Iowa.  As the

State of Iowa has waived sovereign immunity over FLSA claims, even if this Court disregards the Board's express and constructive waivers, this Court should not simply carve out an exception for the Board where the State's waiver is plain.

## **CONCLUSION**

As explained above, the Court should deny the Defendant Iowa Board of Regents' motion to dismiss Plaintiffs' FLSA claim.

Respectfully submitted,

PLAINTIFFS MELINDA MYERS, BARBARA STANERSON, JOHN EIVINS, LIV KELLY-SELLNAU, CHRISTOPHER TAYLOR, and SHUNA TOSA on Behalf of Themselves and Others, Similarly Situated

By their attorneys,

/s/ Benjamin J. Weber
Harold Lichten (*pro hac vice* admission)
Benjamin J. Weber (*pro hac vice* admission)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
bjweber@llrlaw.com

Nathan Willems, AT0009260
RUSH & NICHOLSON, P.L.C.
115 First Avenue SE, Suite 201
P. O. Box 637
Cedar Rapids, IA  52406-0637
Telephone (319) 363-5209
Facsimile (319) 363-6664
nate@rushnicholson.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record through the Court's ECF system on February 26, 2020.

*/s/Benjamin J. Weber*
Benjamin J. Weber