IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| MELINDA MYERS, BARBARA STANERSON, JOHN EIVINS, LIV KELLY-SELLNAU, CHRISTOPHER TAYLOR, and SHUNA TOSA, on behalf of themselves and others similarly situated, ) ) ) ) ) | Case No. 3:19-cv-00081-SMR-SBJ |
| Plaintiffs, ) ) | ORDER ON DEFENDANT'S MOTION TO DISMISS AND |
| v. ) ) | PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION |
| IOWA BOARD OF REGENTS, ) ) | |
| Defendant. ) | |

In this putative class action Plaintiffs allege violations of the Iowa Wage Payment and Collection Law ("IWPCL") and the Fair Labor Standards Act ("FLSA") for delayed overtime remunerations and termination pay against Defendant Iowa Board of Regents ("the Board"), an administrative subdivision of the state government. *See* [ECF No. 1-1 at 46–60]. Plaintiffs seek conditional certification of their FLSA collective action, [ECF No. 14], but the Board moves to dismiss, asserting that claim is barred by the state's sovereign immunity, [ECF No. 20]. The Board has waived its sovereign immunity to suit under the FLSA, and conditional certification is proper. Accordingly, the Board's Motion to Dismiss is DENIED, and Plaintiffs' Motion for Conditional Certification is GRANTED.[1]

---

[1] The parties did not request a hearing, and the Court finds the matters raised in the parties' motions can be resolved without oral argument. *See* LR 7(c).

## I.  BACKGROUND

Plaintiffs in this case are current and former employees of the University of Iowa Hospitals and Clinics ("UIHC"), a state medical facility operated and managed by the Iowa Board of Regents. [ECF No. 1-1 at 48–49 ¶¶ 1–6, 8–9].   Their three-count Amended Petition, originally filed in the Iowa District Court for Johnson County, alleges claims for timely payment of wages under both state and federal labor law on behalf of three separate classes of workers.   In Count I, the "Wages Class," consisting of former, current, and future healthcare providers at UIHC, brings suit to enforce their right to timely payment of earned wages under the IWPCL, Iowa Code § 91A.3.   *Id.* at 8 ¶¶ 27–33, 14 ¶¶ 50–52.   In Count II, the "Termination Pay Class," also consisting of former, current, and future healthcare providers at UIHC, sues for timely payment of accrued vacation pay upon the end of their employment with UIHC under the IWPCL, Iowa Code § 91A.4.   *Id.* at 10 ¶¶ 34–41, 14 ¶¶ 53–56.  Pertinent to the present motions is Count III, in which the "Overtime Pay Class," consisting of all former, current and future employees who UIHC designates as non-exempt from overtime pay, brings suit to enforce their right to be timely paid overtime premiums or shift differentials as provided by the IWPCL, Iowa Code § 91A.3, and the FLSA, 29 U.S.C. § 207(a). *Id.* at 12 ¶¶ 42–49, 14–15 ¶¶ 57–59.

UIHC pays overtime wages to its eligible employees through the Board's collective bargaining agreements, operations manual, and employee handbook.   *See* [ECF No. 26-1 at 4] (UIHC Operations Manual) (describing overtime pay policies for "staff members who are eligible for overtime under the [FLSA]" including "all merit staff, as well as non-exempt professional and scientific staff"); *id.* at 16 (collective bargaining agreement) (describing pay classifications and denoting classes of workers who are "non-exempt under the [FLSA]"); *id.* at 26 (employee manual) ("Bargaining unit classifications are designated by the Employer as exempt or non-exempt in accord

with the [FLSA].  Those designated as non-exempt are eligible for overtime consistent with the Act.").  According to the Amended Petition, UIHC violates Plaintiffs' rights under the FSLA by consistently and purposefully paying overtime wages on an untimely basis.  Non-exempt employees at UIHC included in the Overtime Pay Class are labeled as "merit" employees subject to the Iowa state employee merit system.  *See* Iowa Code § 8A.412.  These employees include custodians, clerical workers, and health care technicians, among others.  [ECF No. 14-1 ¶¶ 3–4, 6].  Certain professional and scientific employees, or "P&S" employees, are also labeled as non-exempt by UIHC.  *Id.* ¶ 5.  Plaintiffs are paid on a monthly basis.  Yet, they claim their wages for overtime hours are not paid along with their regular wages for the pay period in which they are earned; rather, the overtime remunerations are paid along with wages for a different pay period, one month or more later.  UIHC's written Human Resources Policy for Merit, Merit Exempt and Non-Exempt P&S Time Records, the plan to which Plaintiffs of the Overtime Class claim they are subject, states: "Adjustments computed from your monthly time record can include payments for overtime . . . . These payments will always be one month in arrears—for example, adjustments recorded for October will be reflected in the pay you receive during December."  [ECF No. 14-1 ¶ 2]; *see also id.* at 3.  Thus, Plaintiffs allege UIHC only pays its non-exempt workers their base rate for their work during a given pay period; they do not pay the overtime premium, or "adjustment," until a later paycheck.  This practice, they claim, violates the FLSA.

As a representative of the Overtime Pay Class, Shuna Tosa, a custodian at UIHC and named Plaintiff, states her earning history reflects this overtime pay policy in practice and demonstrates she is routinely not paid for her overtime work until a paycheck one month later.  [ECF No. 14-2 ¶¶ 7–12].  Tosa points to her time records and paycheck review for the pay period between May 1, 2018, and December 1, 2018.  *See id.* at 4–19.  Tosa asserts that on numerous occasions she

worked more than forty hours in one week, entitling her to overtime pay.  *Id.* ¶¶ 7, 10.  But while she was paid her base salary on the first of every month, Tosa's records show her paycheck for that pay period did not include the overtime pay that she had earned; instead, she did not receive that overtime pay until the paycheck covering the period after the one in which she worked the overtime hours (i.e., one month later).  *Id.* ¶¶ 7–12.  For instance, even though she worked fifty-nine hours the week of May 7, 2018, and received her base salary for that May pay period on June 1, 2018, she did not receive her overtime pay for that period until July 1, 2018.  *Id.* ¶¶ 7–9.  Similarly, she states she worked approximately sixty hours the week of June 4, 2018, and although she received her base pay on July 1, 2018, she did not receive her overtime pay for that week until August 1, 2018.  *Id.* ¶¶ 10–12.  Tosa asserts other UIHC workers similarly situated to her are subject to the same practice. *Id.* ¶¶ 6, 13.

After the case was removed to federal court, Plaintiffs—specifically, the Overtime Pay Class—sought conditional certification of their overtime wage claim as a collective action under § 216(b) of the FLSA.  [ECF No. 14].  In addition to resisting that motion, the Board moved under Rules 7(b) and 12(h) to dismiss Count III of the Amended Petition on the basis that Plaintiffs' FLSA claim against the Iowa Board of Regents is barred by the state's sovereign immunity.  [ECF No. 20].

## II.  MOTION TO DISMISS

The Board claims the Court lacks subject matter jurisdiction to preside over Plaintiffs' FLSA claim because Iowa's sovereign immunity precludes private suit for money damages against it as an arm of the state.  Expressly or impliedly, Plaintiffs insist, the State has subjected the Board to private suit under the FLSA through the statutory scheme of the IWPCA and the Board's accompanying treatment of its employees' rights *vis-à-vis* the FLSA.  The Court agrees the Board's

policies, in the context of Iowa's wage payment statute, constructively waive its sovereign immunity.

### A. Standard of Review

"[I]t is axiomatic that . . . sovereign immunity implicates [federal courts'] subject matter jurisdiction . . . and the government may raise it at any stage." *Jones v. United States*, 255 F.3d 507, 511 (8th Cir. 2001)). And "[i]f the court determines at any time it lacks subject-matter jurisdiction"—that is, if it determines a claim to be barred by a state's sovereign immunity—"the court must dismiss" that claim. Fed. R. Civ. P. 12(h)(3). Plaintiffs bear the burden of proving subject matter jurisdiction. *Great Rivers Habitat All. v. FEMA*, 615 F.3d 985, 988 (8th Cir. 2010); *see Yaakov v. Varitronics, LLC*, 200 F. Supp. 3d 837, 839 (D. Minn. 2016) ("A motion to dismiss for lack of subject matter jurisdiction under Rule 12(h)(3) is governed by the standard of Rule 12(b)(1)."). They likewise bear the burden of proving a waiver of sovereign immunity. *V S Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000); *Olson v. Soc. Sec. Admin.*, 243 F. Supp. 3d 1037, 1053 (D.N.D. 2017); *see also Lee v. State*, 815 N.W.2d 731, 743 (Iowa 2012) (concluding the Iowa plaintiff failed to fulfill her "burden to show that the exclusion of the [statutory] language was designed to [constructively] waive sovereign immunity"). Because the Board fails to specify whether it launches a "facial" or "factual" attack on the Court's jurisdiction, *see Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)), the Court presumes its post-answer motion consists of a broad factual challenge in which the Court has "wide discretion" to consider matter outside the pleadings, *see Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008) (citation omitted); *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) (noting "there is no statutory procedure upon an issue of jurisdiction, [and] the mode of its determination is left to the trial court" (citation omitted)).

*B.  Analysis*

Extending beyond the Eleventh Amendment, *Fed. Maritime Comm'n v. S. Carolina State Ports Auth.*, 535 U.S. 743, 754 (2002), the doctrine of sovereign immunity represents the longstanding principle that nonconsenting states cannot be subjected to private suit for money damages under federal law unless Congress has validly abrogated that constitutional immunity, *Alden v. Maine*, 527 U.S. 706, 713 (1999) ("[T]he States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today."); *Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019) ("Sovereign immunity is the privilege of the sovereign not to be sued without its consent." (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011))).  Congress, in enacting the FLSA, did not validly abrogate states' sovereign immunity.  *Alden*, 527 U.S. at 712.  Consent to suit otherwise constitutes a state's waiver of its sovereign immunity and requires the state to make a "'clear declaration' that it intends to submit itself to [federal] jurisdiction."  *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 680–82 (1999) (citation omitted) (emphasizing the "classic description of an effective waiver of a constitutional right is the 'intentional relinquishment or abandonment of a known right or privilege.'" (citation omitted)).

At issue here is whether the State of Iowa has consented to private suit under the FLSA specifically against the Board of Regents.[2]  The FLSA generally prohibits employers from requiring their employees to work longer than a forty-hour workweek "unless such employee receives compensation for his [or her] employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he [or she] is employed."  29 U.S.C. § 207(a);

---

[2] The State of Iowa, and the Board of Regents, are "employers" within the mandate of the IWPCA.  *See* Iowa Code § 91A.2(4); *id.* § 4.1(20).

*see also id.* § 207(e) (defining "regular rate" to include "all remuneration for employment paid to, or on behalf of, the employee," subject to certain exceptions). In *Anthony v. State*, 632 N.W.2d 897 (Iowa 2001), the Iowa Supreme Court found that the state had expressly waived its sovereign immunity to suit under the FLSA after being "convinced that the [IWPCA] statutory scheme for deriving pay plans has been implemented in a manner that includes FLSA overtime remuneration as compensation owed by an employer." *Id.* at 902; *accord Raper v. State*, 688 N.W.2d 29, 54 (Iowa 2004). Relevant here, the IWPCA broadly defines "wages" to mean "compensation owed by an employer" for:

    a. Labor or services rendered by an employee, whether determined on a time, task, piece, commission, or other basis of calculation.

    b. Vacation, holiday, sick leave, and severance payments which are due an employee under an agreement with the employer or under a policy of the employer.

    c. Any payments to the employee or to a fund for the benefit of the employee, including but not limited to payments for medical, health, hospital, welfare, pension, or profit-sharing, which are due an employee under an agreement with the employer or under a policy of the employer. The assets of an employee in a fund for the benefit of the employee, whether such assets were originally paid into the fund by an employer or employee, are not wages.

    d. Expenses incurred and recoverable under a health benefit plan.

Iowa Code § 91A.2(7). Looking to the contours of the regulatory framework in effect at the time, the Court noted the rules implementing the state wage law defined key terms in such a way as to effectively incorporate the requirements of the FLSA in the payment of wages under the IWPCA. The relevant regulations provided, by way of definition:

    "*Overtime*" means those hours that exceed 40 in a workweek for which an employee is entitled to be compensated.

    "*Overtime covered class, employee, or position*" means a class, employee, or position determined to be eligible for premium overtime

> compensation in accordance with the federal Fair Labor Standards
> Act.

*Anthony*, 632 N.W.2d at 902 (quoting Iowa Admin. Code r. 581–1.1 (2001) (repealed)). The

regulations also provided:

> *Eligible job classes.* An employee in a job class designated as
> overtime eligible shall be paid at a premium rate (one and one-half
> hours) for every hour in pay status over 40 hours in a workweek.

*Id.* (quoting Iowa Admin. Code r. 581–4.11(2) (2001) (repealed)).  In short, the Court held that

"[a]lthough the impetus for state wage policy involving FLSA overtime pay is the mandate of the

federal legislation, the State has acceded to that mandate in a manner that establishes the resulting

overtime remuneration as compensation owed by an employer."  *Id.* at 901.  The current versions

of those regulations continue to invoke the FLSA as to employees of the State of Iowa at large.

*Compare* Iowa Admin. Code r. 581-1.1 (2001) (repealed) *with* Iowa Admin. Code r. 11-50.1(8A)

*and id.* r. 11-53.11(8A)(2)–(3).

Critically, however, neither the regulations considered in *Anthony* nor their modern

counterparts apply to the Board of Regents.  Iowa law provides for a "merit system" to govern the

compensation of state employees and instructs the Department of Administrative Services to adopt

rules providing "[f]or pay plans covering all employees in the executive branch, *excluding*

*employees of the state [B]oard of[R]egents.*"  Iowa Code § 8A.413(3) (emphasis added); *Anthony*,

632 N.W.2d at 901–02 (emphasis added) (quoting former Iowa Code § 19A.9(2) (2001) (repealed));

*see also* Iowa Admin. Code r. 11-53.1(8A) ("The director shall adopt pay plans for all classes and

positions in the executive branch of state government, except as otherwise provided for in the Iowa

Code.").  The Iowa Legislature has separately instructed the Board to "adopt rules not inconsistent

with the objectives of [the state human resource management] subchapter for all of its employees,"

"subject to approval by the director."  Iowa Code § 8A.412(5); *see also* Iowa Admin. Code

r. 681-3.37(8A) (affirming that "[t]he [B]oard of [R]egents will adopt a pay plan for all the classes established in the classification plan").  But the regulations promulgated by the Board of Regents do not include definitions of "overtime" as do those applicable to employees in the rest of the state executive branch, and Plaintiffs concede the Board has not specifically created rules for overtime pay that conflict with those promulgated by the Department of Administrative Services.  *See* [ECF No. 26 at 3]; *compare* Iowa Admin. Code r. 681-3.14(8A) *with id.* r. 11-50.1(8A) (defining "overtime," "overtime covered class, employee, or position," and "overtime exempt class, employee, or position" as it applies to all other employees in the Iowa executive branch).  And neither do they affirmatively provide for those overtime payment rights on their own.  Because the Board of Regents has not adopted definitions implementing the IWPCA that were so critical to the Court's holding in *Anthony*, and the Board is not governed by those regulations subjecting the State at large to suit under the FLSA, the Court cannot say Iowa has expressly waived its sovereign immunity as to the Board in this same way.  *Anthony*, itself, is not dispositive.

Plaintiffs instead point to the IWPCA's definition of "wages" to include "any payments . . . due . . . under an agreement . . . or policy of the employer" in arguing the statutory regime of the IWPCA has expressly waived the Board's immunity from suit under the FLSA.  *See* Iowa Code § 91A.2(7)(c).  Because the Board has entered into agreements with its employees and enacted policies governing employee conduct that state non-exempt workers earn overtime pay pursuant to the FLSA, *see generally* [ECF No. 26-1], Plaintiffs contend "the statute expressly incorporates, not just the formal pay plan developed by the Board, but the contracts and policies of the Board," [ECF No. 26 at 6].  The problem, however, is that this provision of the IWPCA is permissive in its scope, not mandatory.  It merely provides that any payments that an employer's agreement or policy happen to provide for are "wages" that it owes, not that an employer owes any

particular type of payment; the statute does not require specific payments under an agreement or policy, only that, if there are, they constitute "wages" subject to the reach of the statute.  Alone, it cannot be said to constitute an express waiver of the state's sovereign immunity as to the Board as a clear legislative declaration.

Though not enough for *express* consent to suit, the statutory scheme of the IWPCA and the Board's corresponding policies do work together to *constructively* waive the Board's sovereign immunity.  In contrast to the federal rule rejecting implied waiver, *see Coll. Sav. Bank*, 527 U.S. at 680–82, the State of Iowa has joined a number of other states in retaining the doctrine of constructive waiver of sovereign immunity, *see Lee*, 815 N.W.2d at 741–42.  Where the State enters into a contract, *Kersten Co. v. Dep't of Soc. Servs.*, 207 N.W.2d 117 (Iowa 1973), or otherwise voluntarily assumes legal consequences, *State v. Dvorak*, 261 N.W.2d 486 (Iowa 1978), the government may be found to have constructively waived its immunity from suit in that matter.  But regardless of whether UIHC's policies and agreements establish enforceable provisions of a contract, the Board can be presumed to have entered into these employment agreements and drafted its employee policies with knowledge of the condition of Iowa law defining payments made under them as "wages" subject to the IWPCA.  *Cf. Simon Seeding & Sod, Inc. v. Dubuque Human Rights Comm'n*, 895 N.W.2d 446, 467 (Iowa 2017) ("We assume 'when a legislature enacts statutes it is aware of the state of the law.'" (citation omitted)).  Accordingly, the Board's agreements and policies, placed in context of the IWPCA statutory scheme, reflects that it "has acceded to that mandate [of the FLSA] in a manner that establishes the resulting overtime remuneration as compensation owed by an employer."  *See Anthony*, 632 N.W.2d at 901; *cf. Dvorak*, 261 N.W.2d at 489 (subjecting state, upon acquiring land, to longstanding "obligations and duties incident to land ownership").

-10-

The Board argues the mention of FLSA overtime pay in its policies and collective bargaining agreements fails to rebut the notion that its agreement to undertake those duties "was for any purpose other than to comply with the federal regulation" implementing the FLSA.  *See Lee*, 815 N.W.2d at 742–43 (rejecting argument state constructively waived sovereign immunity under Family Medical Leave Act ("FMLA") because plaintiff failed to show the state's handbook provisions were intended to give employees privately enforceable rights as opposed to comply with the federal law's requirements that it, as an employer, post notice to its employees).  That view, however, considers only the Board's conduct in isolation and ignores the explicit statutory incorporation of "any payments . . . due . . . under an agreement . . . or under a policy of the employer" as "wages" due under the IWPCA that the Iowa Supreme Court found to be sufficient for the state to have abrogated its sovereign immunity to suit under the FLSA.  *Anthony*, 632 N.W.2d at 902.  A similar statutory scheme under Iowa law implementing rights under federal law did not exist in *Lee*, which was why proof that the state intended to subject itself to suit under the FMLA was lacking in that case.  Here, by contrast, the Board's inclusion of FLSA overtime pay language into its employee agreements and policies goes beyond mere compliance with federal law because it exists within the state's statutory scheme "in a manner that establishes the resulting overtime remuneration as compensation owed by an employer."  *See Anthony*, 632 N.W.2d at 901; *see also* 29 U.S.C. § 207(a).

In sum, the Court concludes the Board has waived its sovereign immunity to suit under the FLSA.  The Board's Rule 12(h) Motion to Dismiss is therefore denied.

### III. MOTION FOR CONDITIONAL CERTIFICATION

Having concluded sovereign immunity does not bar Plaintiffs' FLSA claim against the Board of Regents, the Court moves on to the issue of preliminary approval of the collective action.

-11-

Conditional certification is proper, and the Court describes below the appropriate form and manner of notice to issue.

### A.  Standard of Review

The FLSA allows aggrieved workers to maintain a collective action against their employers to recover for violations of the statute on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b).  Courts in this circuit follow a two-step process in evaluating FLSA collective actions.  *E.g.*, *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1018 (S.D. Iowa 2016); *Putman v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 269 (S.D. Iowa 2011).  The first step simply requires the Court to consider at an early point in the litigation whether conditional certification of the collective action is appropriate for notice purposes.  *Tegtmeier*, 208 F. Supp. 3d at 1018; *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005).  Later, at the second step, the Court considers whether final certification—or decertification—is appropriate after discovery is complete.  *See Frazier v. PJ Iowa, L.C.*, 337 F. Supp. 3d 848, 861 (S.D. Iowa 2018); *see West v. Border Foods, Inc.*, Civil No. 05-2525 (DWF/RLE), 2006 WL 1892527, at *3 (D. Minn. June 10, 2006) ("At the second stage, the court conducts a fact intensive inquiry of several factors, including: (1) the extent and consequence of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations.").

"[T]he 'sole consequence of conditional certification [under § 216] is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1043 (2016) (second alteration in original) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).  To carry their burden at the conditional certification stage, Plaintiffs must provide

"some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008) (citation omitted); *see also* 29 U.S.C. § 216(b).  Contrasted with the stricter standard at the second step, the burden at the conditional certification stage is "'more lenient,' and does not require existing plaintiffs to 'show that members of the conditionally certified class are actually similarly situated.'" *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 892 (N.D. Iowa 2008) (citation omitted).  But Plaintiffs still "must present more than mere allegations; i.e., some evidence to support the allegations is required." *Id.* (citation omitted).  Generally, though, courts "require[] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Robinson, Inc.*, 254 F.R.D. at 99–100 (quoting *Bouaphakeo*, 564 F. Supp. 2d at 892).  The decision to conditionally certify an FLSA collective action under § 216 ultimately rests within the sound discretion of the district court.  *Bouaphakeo*, 564 F. Supp. 2d at 891 (citing *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1219 (11th Cir.2001)).  And "[i]f the Court conditionally certifies a class, the Court has discretion to facilitate the opt-in process and authorize court-supervised notice to potential opt-in plaintiffs." *Frazier*, 337 F. Supp. 3d at 861.

### B.  Conditional Certification

Plaintiffs move for conditional certification of the Overtime Pay Class as a collective action under the FLSA brought on behalf of "[a]ll individuals who worked for University of Iowa Hospitals and Clinics since August 19, 2016, whom UIHC classified as 'non-exempt' for purposes of overtime pay." [ECF No. 14 at 5].  Plaintiffs point to UIHC's written Human Resources Policy for Merit, Merit Exempt and Non-Exempt P&S Time Records, which states in no uncertain terms that salary adjustments for overtime pay "will always be one month in arrears." [ECF No. 14-1 ¶ 2].  This policy applies to all of the categories of workers classified by UIHC as eligible for overtime pay.

*See id.* ¶¶ 3–6 (describing overtime-eligible, non-exempt, and "merit" employees entitled to overtime pay under UIHC labor classifications); *see also* [ECF No. 14-2 ¶¶ 6, 12].  And through the declaration of a named Plaintiff of the Overtime Pay Class, they have demonstrated this stated policy bears out in practice.  [ECF No. 14-2 ¶¶ 7–12].  Several courts interpreting the FLSA have held the statute requires "'prompt payment' of the minimum wage covering all hours worked during the pay period," *Biggs v. Wilson*, 1 F.3d 1537, 1542 (9th Cir. 1993) (quoting *Olson v. Sup. Pontiac–GMC, Inc.*, 765 F.2d 1570, 1578 (11th Cir. 1985)); *see also Martin v. United States*, 117 Fed. Cl. 611, 621 (2014); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 491 (2d Cir. 1960), and Plaintiffs have made a sufficient preliminary showing that UIHC has not done so.  Though the merits of Plaintiff's claims are not at issue at this stage of litigation, the evidence accompanying their allegations shows they and others similarly situated were subjected to a common decision, plan, or policy, demonstrating a colorable claim and supporting conditional certification.

The Board resists on several fronts, most notably arguing that the class proposed by Plaintiffs is overly broad because it is more expansive than the allegations set forth in the Amended Petition by including workers beyond those covered employees who are subject to UIHC's pay policy at issue and actually received overtime payments.  To the extent this is the case, the Court agrees.  Plaintiffs claim there exist other absent class members subject to UIHC's pay policy for "merit, merit exempt, and non-exempt P&S" employees who are paid overtime wages in an untimely manner in violation of the FLSA.  To ensure Plaintiff's proposed class does not include a broader collection of UIHC workers than those with whom they allege to be "similarly situated," the class certified under § 216 must necessarily be limited so as to include only those merit, merit

exempt, and non-exempt P&S UIHC workers subject to the same UIHC pay policy that Plaintiffs allege violate the FLSA.

Moreover, beginning the class period on August 19, 2016 goes beyond the maximum statute of limitations for the class's claims. *See* 29 U.S.C. §§ 255(a) (providing three-year limitations period for a "willful violation"); 256(b) (stating a collective action is not "commenced" as to an absent class members until the individual claimant files written consent); *see also Resendiz-Ramirez v. P&H Forestry, LLC*, 515 F. Supp. 2d 937, 942–43 (W.D. Ark. 2007) (stating the willfulness of any violation is a matter for discovery). The Court will equitably toll the statute of limitations to run three years back from the date of Plaintiffs' Motion for Conditional Certification and restrict the time period of the class accordingly. *See Frazier*, 337 F. Supp. 3d at 876; *Vinsant v. MyExperian, Inc.*, No. 2:18-CV-02056, 2018 WL 3313023, at *5 (W.D. Ark. July 5, 2018) (noting "[t]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in an FLSA case, may be deemed an 'extraordinary circumstance[]' justifying application of the equitable tolling doctrine" (alterations in original) (quoting *Yahraes v. Rest Assocs. Events Corp.*, No. 10-CV-935 (SLT), 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011)). "[I]t is well within the [C]ourt's discretion to refine Plaintiffs' proposed collective action class in this manner." *Bouaphakeo*, 564 F. Supp. 2d at 900–01 (citing *Baldridge v. Sbc Comm'ns, Inc.,* 404 F.3d 930, 931−32 (5th Cir.2005)).

The Board's remaining arguments ultimately attempt to litigate the merits of Plaintiffs' FLSA claim or raise individualized inquiries that fail to overcome the lenient standard permitted at the notice stage of conditional certification. Such arguments are more appropriately reserved for a motion for decertification or summary judgment after discovery. In attempting to limit class notice to only those who worked more than forty hours per week and received untimely overtime pay, the

Board's objections go to the damages recoverable by class members. *See Williams v. King Bee Delivery, LLC*, Civil Case No. 5:15-cv-306-JMH, 2017 WL 987452, at *6 (E.D. Ky. Mar. 14, 2017) ("If, after discovery, the parties find that an opt-in plaintiff . . . did not work more than forty hours per week without receiving overtime wages, then he or she will simply be regarded as a member of the collective action with no damages."); *Chapman v. Hy–Vee, Inc.*, No. 10-CV-6128-W-HFS, 2012 WL 1067736, at *3 (W.D. Mo. Mar. 29, 2012) ("[T]he issue [at the conditional certification stage] is not whether each class member was identically injured by an illegal policy, but rather [whether all class members] were . . . subject to the same policy."); *cf. Hose v. Henry Indus., Inc.*, 49 F. Supp. 3d 906, 917 (D. Kan. 2014) (noting differences in work were properly considered at the second, not initial stage of FLSA class certification).  And although it is true that independent contractors do not fall within the statute's protections, *see Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947), the broad scope of the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles," *Karlson v. Action Process Serv. & Private Investigations, LLC*, 860 F.3d 1089, 1092 (8th Cir. 2017) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)); *Thornton v. Mainline Comm'ncs, LLC*, 157 F. Supp. 3 d 844, 848 (E.D. Mo. 2016) (considering six factors in determining the "economic reality of the working relationship").  The exact employment status of individual class members is not a proper question at this stage, for "[t]he weight of authority favors the position that conditional certification may be ordered before the employment relationship should be clarified." *Benion v. Lecom, Inc.*, No. 15-14367, 2016 WL 2801562, at *11 (E.D. Mich. May 13, 2016); *see Arnold v. DirectV, Inc.*, No. 4:10-CV-352-JAR, 2012 WL 4480723, at *5 (E.D. Mo. Sept. 28, 2012) ("The fact that threshold employment questions exist does not keep the Court from considering the propriety of conditionally certifying the collective action.");

*Putman*, 276 F.R.D. at 274 ("Making a determination, at this time, of whether the satellite installation technicians were independent contractors or employees pursuant to the 'economic realities' test, would . . . improperly delve into the merits of Plaintiffs' claim.").

The Board also contends Plaintiffs have failed to show there are other "similarly-situated" potential plaintiffs who want to join this lawsuit and would opt-in if given the choice to do so. However, Plaintiffs provide affidavits stating that eligible and non-exempt workers would be interested in joining the lawsuit.  [ECF Nos. 14-2 ¶ 13; 29 at 14].  And counsel to the union that represents these workers attests that the prompt payment of overtime pay is an issue of common interest among its members.  [ECF No. 29 at 12]; *see also id.* at 9–10.  This showing is sufficient for purposes of conditional certification.  *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1091 (D. Minn. 2014) ("[A] plaintiff's burden to demonstrate interest is not particularly onerous."); *cf. Anderson et al. v. Wells Fargo Fin., Inc.*, Nos. 4:11-cv-00085, 4:12-cv-00183, 2012 WL 12871956, at *5 (S.D. Iowa Dec. 11, 2012) (denying conditional certification where there was no evidence at all that any of the 600 potential class members had interest in the lawsuit); *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164–65 (D. Minn. 2007) (denying conditional certification where plaintiffs merely speculated they were "informed and believe[d]" other opt-in plaintiffs existed).

In sum, Plaintiffs have succeeded in "making a modest factual showing sufficient to demonstrate [they] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360, 363 (W.D. Mo. 2007) (citation omitted).  The Court therefore conditionally certifies the following class under § 216(b):  All individuals who worked for the University of Iowa Hospitals and Clinics from January 8, 2017**,** to

the present and were classified as merit, merit-exempt, or non-exempt P&S for purposes of overtime pay.

## C.  Notice

Having determined conditional certification to be appropriate, "the Court has discretion to facilitate the opt-in process and authorize court-supervised notice to potential opt-in plaintiffs." *Frazier*, 337 F. Supp. 3d at 861–62; *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 939 (D. Minn. 2009) (citing *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).[3]  The goal of the notice process is to ensure potential plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so they can make informed decisions about whether to participate." *Hoffman-La Roche*, 493 U.S. at 170.  Plaintiffs request the Court approve their proposed notice, [ECF No. 14-4], and opt-in form, [ECF No. 14-5], attached to their motion.  The Board raises several objections to the form of the notice and its method of dissemination proposed by Plaintiffs.

### 1.  Form of notice

The Board first objects to aspects of the form of the notice and offer several amendments to its content and language.  *See* [ECF No. 22 at 19–21].  The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide "accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317,

---

[3]  The Supreme Court's discussion of collective actions brought under the Age Discrimination in Employment Act ("ADEA") in *Hoffmann-La Roche* applies with equal force to motions for conditional certification under the FLSA because "the ADEA, 29 U.S.C. § 626(b), 'expressly incorporates by reference the remedies and enforcement provisions of FLSA § 216(b).'" *Frazier*, 337 F. Supp. 3d at 862 n.9 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 264 n.15 (S.D.N.Y. 1997)).

323 (S.D.N.Y. 2007) (quoting *Hoffmann–La Roche,* 493 U.S. at 170).   The Court has broad discretion on the details of the notice, and although it will consider reasonable amendments, "those that are 'unduly argumentative, meant to discourage participation in the lawsuit, or are unnecessary or misleading' should be rejected."   *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (citation omitted).

The Court approves some, but not all, of the amendments offered by the Board.  The Board's suggestion to the header and introductory paragraph will be adopted in part; the Court's disclaimer will be included within this paragraph, described below.  *See Frazier*, 337 F. Supp. 3d at 874–75 (noting that "the Court 'must scrupulously avoid endorsing or appearing to endorse the merits of the underlying claim'" (quoting *Martinez v. Cargill Meat Sols.*, 265 F.R.D. 490, 499 (D. Neb. 2009))). The header shall read, in bold font, as follows:

> This notice is for the sole purpose of determining the identity of those persons who wish to be involved in this case. Although the United States District Court for the Southern District of Iowa has authorized sending this notice, the court has not considered or made any decision as to the merits of Plaintiffs' claims or Defendant's defenses and expresses no opinion on the merits of the lawsuit.

The Court also approves of the Board's proposed change to the introductory paragraph delineating (1) the existence of the lawsuit, (2) absent class members' rights, and (3) instructions on how to exercise those rights.

Likewise, the Court approves of the Board's proposed change to the description of the lawsuit.  The Board's phrasing is more concise and more accurately articulates the claim made in this case under the FLSA; inclusion of any reference to the other causes of action in this FLSA collective action notice is improper since the purpose of the notice is to notify class members of the FLSA collective action, not any other.

The section titled "Your Right to Make a Claim in This Lawsuit" shall be changed to "Your Rights."  The content of this section in Plaintiffs' proposed notice adequately describes the right of absent class members to opt in to the lawsuit, or not, and the Board's amendments are unnecessary. However, the description of the conditionally certified class shall be included and shall reflect that approved by the Court in this Order.  The Board's proposal to eliminate the "How to Make a Claim" paragraph is denied.

Next, the Court approves the proposed changes to the "Legal Effect" section except for the Board's inclusion of language stating absent class members could be liable for court costs and expenses.  Language stating that opt-in plaintiffs may be responsible for costs to the Board if they do not prevail has too much potential to inflict an *in terrorem* effect and "unreasonably chill participation in this action by potential class members."  *King v. ITT Cont'l Baking Co.*, No. 84 C 3410, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986); *see also Austin v. CUNA Mut. Ins. Soc.*, 232 F.R.D. 601, 608 (W.D. Wis. 2006); *Herrera v. Unified Mgmt. Corp.*, No. 99 C 5004, 2000 WL 1220973, at *2–3 (N.D. Ill. Aug. 18, 2000).  Its inclusion is, in the Court's view, unnecessary and potentially confusing.  Nor does the Court approve of language regarding class members' right to hire a different attorney to represent him or her in this collective action. "Suggesting that a plaintiff may opt in and bring her own lawyer along would lead to confusion, inefficiency and cumbersome proceedings.  If a class member wishes to have her own lawyer, she need not opt in; she can hire her own lawyer and proceed with her own action."  *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 541 (N.D. Cal. 2007); *see also Kely v. Bluegreen Corp.*, 256 F.R.D. 626, 632 (W.D. Wis. 2009) (stating such language "would suggest that plaintiffs' counsel were not litigating 'for and in behalf of' all opt-in plaintiffs, which is the type of action that § 216(b) allows").  Also, in order to avoid confusion, the Board's proposed language about a putative plaintiff later

being determined to not be a proper member of the collective action shall be included but limited to the following language: "If you do file a completed consent form, you will be bound by the judgment of the court on all FLSA issues in this case, win or lose, unless you are otherwise dismissed from the lawsuit." However, the notice shall reflect that putative plaintiffs may be asked to provide information, sit for depositions, or testify in Court. *See Am. Maxwell v. Tyson Foods, Inc.*, No. 1:08-cv-0017-JAJ, 2009 WL 10637245, at *6 (S.D. Iowa Nov. 6, 2009).

Finally, the Court approves the changes to the opt-in consent form proposed by the Board. The Board's revision to paragraph three more accurately reflects the actual claim being made in this FLSA collective action and, as described above, more accurately describes the contours of the class. Although the Court declines to insert language in the notice regarding putative plaintiffs' right to hire their own attorney at their own expense, including such an option in the consent form is appropriate. Plaintiffs do not object to either revision.

## 2.  Method of notice

The Board also takes issue with the proposed method of disseminating the notice to class members. First, the Board argues notice should be limited to first-class mail and objects to any email or text message transmission of the notice. *See Putman*, 276 F.R.D. at 277 ("First class mail is generally considered to be the best form of notice."). Plaintiffs insist electronic notice through email is appropriate. But "there are legitimate concerns with improper solicitation, even unintentional, and privacy that counsel against providing telephone numbers without some showing that notice by first-class mail is actually insufficient." *Harvey v. AB Electrolux*, 857 F. Supp. 2d 815, 820 (N.D. Iowa 2012); *Vinsant*, 2018 WL 3313023, at *6 (denying additional notice via text and phone as "repetitive and unnecessary" in the absence of "circumstances indicating an unusual amount of difficulty in locating the putative members"). Plaintiffs make no attempt to explain why

first-class mail is insufficient in this case, where the entire class is confined to a relatively close geographic area among several of UIHC's locations in eastern Iowa. Notice shall therefore be limited to first-class mail. Likewise, Plaintiffs' request that the Board turn over the telephone numbers of putative class members is denied.

The Board also seeks to limit the opt-in period to sixty days, compared to Plaintiffs' proposed ninety days. "Notice periods may vary, but numerous courts around the country have authorized ninety-day opt-in periods for collective actions." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012). The Board offers no convincing reason why a shorter opt-in period should be ordered, and the Court finds that allowing a ninety-day window for potential class members to opt in to the collective action is appropriate in this case, especially since notice will not be sent out through electronic means.

Finally, the Board objects to Plaintiffs' request to issue a follow-up notice reminding those potential class members who have not opted in to the collective action within forty-five days of the issuance of the original notice. The Court agrees this is not appropriate "in the absence of any particular demonstrated necessity warranting another notice." *Islam v. LX Ave. Bagels, Inc.*, No. 18 Civ. 04895 (RA) (RWL), 2019 WL 5198667, at *12 (S.D.N.Y. Sept. 30, 2019); *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012) (denying follow-up notice when the plaintiffs "ha[d] not identified any reason why a reminder notice is necessary").

## IV. CONCLUSION

For the reasons discussed above, the Board's Motion to Dismiss, [ECF No. 20], is DENIED. Plaintiff's Motion for Conditional Class Certification under the FLSA, [ECF No. 14], is GRANTED consistent with the provisions of this Order.

IT IS FURTHER ORDERED that the following collective class shall be conditionally certified, represented by the named Plaintiffs of the Overtime Pay Class:

> All individuals who worked for the University of Iowa Hospitals and Clinics from January 8, 2017, to the present and were classified as merit, merit-exempt, or non-exempt P&S for purposes of overtime pay.

IT IS FURTHER ORDERED that Plaintiffs, under the supervision of this Court, shall be permitted to issue notice to potential plaintiffs by first-class mail informing them of their right to opt-in to this case in the form of the proposed Notice and Opt-In Consent Form attached to Plaintiffs' motion as Exhibits 4 and 5, respectively, while reflecting the changes outlined in this Order.

IT IS FURTHER ORDERED that the opt-in period shall be ninety days from the first issuance of the notice.

IT IS FURTHER ORDERED that Defendant shall produce to Plaintiffs a list of all non-exempt employees who worked more than 40 hours a week without receiving timely payment of overtime pay since January 8, 2017—including their names, last-known mailing addresses, work locations, and dates of employment—within fourteen days of the date of this Order.

IT IS SO ORDERED.

Dated this 5th day of May, 2020.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT